**F I L E D**

MAR 2 5 2002

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Daniel W. Barwick, William R. Brown, and others similarly situated,<br><br>              Plaintiffs,<br><br>    vs.<br><br>The City of Sumter, Bill Hoge and Joseph Postell,<br><br>              Defendants. | C/A No. 3:01-2213-19<br><br><br>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## STATEMENT OF THE CASE

This is an action under 42 U.S.C. § 1983 for violation of the Plaintiffs' First Amendment right to freedom of speech and the Plaintiffs' rights under the due process clause of the Fourteenth Amendment to fair notice. Plaintiffs allege collateral state causes of action for malicious prosecution and defamation.

## STATEMENT OF FACTS

On December 7, 1999, a date that will live in infamy, the City of Sumter adopted a zoning and development standards ordinance which greatly violates the First Amendment prohibition against the abridgment of the right of freedom of speech. The ordinance is content specific and places its seal and stamp of approval on certain types of speech, mainly the flying of the symbols of the United States and the State of South Carolina. Any other flags used as symbols are subject to approval and censorship by the Defendant City. This specific language is contained in a note to Exhibit 19 of the ordinance and states, "Flags, including flags of

21

the United States, the state of South Carolina or any other flags sanctioned by these regulations are allowed provided that such flags not exceed 24 square feet in area and shall not be flown from a pole more than 45 feet in height.  American flags must be flown in accordance with the protocol established by the Congress of the United States for the Stars and Stripes.  Any flag not meeting these conditions shall be considered a banner sign and shall be subject to regulation as such." Sumter Ordinance 1722, Article 8, Section 1, 8.i.7.

Plaintiff Brown has flown and wished to fly various flags prohibited by the ordiance but was deterred by Defendants from doing so.  (Brown depo. pp. 45, 54, 58, 81).

In addition to advocating particular symbols to the exclusion of all others the ordinance mandates the matter in which those symbols are to be used.  The American flag cannot be flown upside down, desecrated in any way or altered so as to express any other message other than the official message.

Also noteworthy is that throughout the aforestated section the reference to flags is always in the plural.  The ordinance talks about "flags of the United States" and "American flags... ."  The singular term for flag is used only in reference to any other flag sanctioned and any flag not meeting these conditions shall be considered a banner sign.

Although the ordinance itself is clear enough in allowing the flying of American "flags", Defendant Hoge took it upon himself to prohibit the flying of more than one American flag.  There does

not appear to be any authority for him having done so.  According to the mayor of Defendant City, Defendant Hoge knew the ordinance's language was ambiguous.

From the clear language of the ordinance and in reliance on legal counsel, Plaintiffs put up multiple American flags, partially in protest of the Plaintiffs' disapproval of the ordinance and its perceived silliness.  Plaintiff Brown says so in his deposition.  (Brown depo. p. 59).  Multiple flags expressed rebellion against Sumter.

In an attempt to restrict the Plaintiff's speech, Defendant Hoge sent Plaintiff Brown a letter warning him not to fly but one symbolic flag.  Plaintiff Barwick also received a notice of violation from Defendant Postell demanding that he remove all but one symbol.

Having failed in their effort to chill and inhibit the Plaintiffs from exercise of their symbolic speech, Defendant Postell at the direction of Defendant Hoge issued summonses to both of the Plaintiffs.

Outraged the Plaintiffs went to the public media to express their views.

Following the public outcry the mayor of the Defendant Sumter as its spokesman issued a public statement admitting that the ordinance was vague and ambiguous and violated the Plaintiffs' rights.  To quote the mayor, "I believe that even the planning director has referred to the flag provisions of the zoning ordinance as being ambiguous."  He also said, "I believe that our

ordinance is probably confusing to a business person who wants to comply with the law. This confusion is obvious because some businesses which were displaying multiple flags removed them when the ordinance became effective. Therefore, we need to revisit this ordinance and make its requirements clearer to all before anyone is prosecuted for not complying with it."

Plaintiffs have lost business, have been held up to ridicule, lost time from gainful enterprise, had to pay attorney fees and been greatly distressed by these events. (Brown depo. pp. 51, 55, 61, 62, 67, 68, 69, 70, 78).

**ARGUMENT**

## I.  Freedom of Speech

### (a).  Plaintiffs' Free Speech Claims are Ripe.

The Plaintiffs' freedom of speech was blatantly censored by an ordinance which was content specific. Plaintiff Brown has flown and had desired to flag various flags of varying symbolism. Unable to display the symbols he desired to by the Defendants, Plaintiff Brown, together with the Plaintiff Barwick chose to protest the ordinance by flying multiple American flags. The symbolism and ridicule of the arbitrariness of Defendants and their ordinance was not lost on the public which rallied behind the Plaintiffs. Plaintiffs seek more than injunctive relief. Basic damages including attorney fees, loss of income, emotional distress, public embarrassment and punitive damages to deter the Defendants from some future conduct equally as defiant of the First Amendment.

4

Distinguishing this case from <u>American Legion Post 7 of Durham, North Carolina v. City of Durham</u>, 239 F.3d 601 (4th Cir. 2001) is the content specific language of the ordinance. All speech other than the officially approved speech was prohibited by the Defendants. This is the criteria the Fourth Circuit was looking for and did not find in <u>American Legion</u>, 239 F.3d at 607. The Fourth Circuit in <u>American Legion</u> notes, "Flags, especially flags of a political sort, enjoy an honored position in the First Amendment hierarchy." <u>American Legion</u>, 239 F.3d at 607. In choosing not to apply heightened First Amendment scrutiny the Fourth Circuit noted, "The City responds that its 1998 ordinance is content neutral because it <u>does not facially distinguish between flags based on the messages that they convey</u> and because there is no evidence that, in enacting the ordinance, the City was motivated by a content based purpose." <u>American Legion</u> at p. 607.

Contrary to the Defendants' argument on page 7 of their memorandum that the <u>American Legion</u> case is nearly identical, it is 180 degrees opposite. Although the present ordinance is content neutral, that is merely an admission that the initial ordinance was an exercise in constitutionally prohibited censorship. Plaintiffs were in effect gagged and prohibited from speaking and exercising the essence of their freedom as Americans, self-expression. The frustration of the Plaintiffs' very spirit and personhood in not allowing them to express who they were deprived them of their standing as an American citizens.

5

At this point the Plaintiffs withdraw any request for relief involving an injunction against the former ordinance. Like citizens beaten in violation of the Fourth Amendment, the cessation of the beating and the restraints do not remove or compensate for the damages the Plaintiffs received.

**(b). Censoring the Plaintiffs' symbolic speech to the American flag or the state flag is a severe restraint of the First Amendment. Censoring the manner in which the Plaintiffs could display the American and state flags and whatever symbolism there is in numbers was merely another prohibited restriction of their freedom of expression.**

American Legion, at 607 lists a number of cases from our highest court involving speech through the use of a flag in an unsanctioned manner. Texas v. Johnson , 491 U.S. 397, 406 (1989) recognized even the burning of the flag as protected speech. Altering the flag to affix a peace symbol is also acknowledged as protected speech in Spence v. Washington, 418 U.S. 405, 409-10 (1974). Plaintiffs here spoke defiantly not by disrespectfully burning the flag or mutilating it, but by patriotically flying multiple flags in the Defendants' face to protest their attempts at restraining the Plaintiffs from expressing themselves. As Plaintiff Brown stated, "No, I didn't have the American flag for advertisement. I had that for a rebellion purpose." (Brown depo. p. 59).

More important, and the point which Defendants are attempting to gloss over, is the fact that the ordinance specifically prohibited Plaintiffs Brown and Barwick from flying any other flag than the American flag or the state flag. Plaintiff Brown desired to fly a variety of flags with wide historical and

symbolic significance.  That is content based censorship and clearly prohibited by the First Amendment.  It was inexcusable and the Defendants have admitted as much publicly once forced under public scrutiny.

Plaintiffs were censored from expressing in the symbolism of divergent flags any message other than the message the Defendants wanted them to say.  They were forced to restrain what they did say to the medium of the American flag.  They put up multiple flags to mock the Defendants and their ordinance and had the bludgeon of criminal penalty waived in their face by the Defendants to force them to complete silence.  The content of the Plaintiff's speech was first muffled and then the Defendants were going to snuff it out entirely until an outraged public stood up behind the Plaintiffs.

(c).  **Damage to the essence of the Plaintiffs' personhood and citizenship.**

Plaintiffs, had they been allowed, would have expressed themselves ultimately through the symbolism of many flags with different meanings and statements.  This expression was actually chilled and suppressed and the messages censored.  And, it is not only the Plaintiffs who have suffered thereby.  It is the public.  Plaintiffs fellow citizens were deprived of their voice and point of view.  Dombrowski v. Pfister, 380 U.S. 479 (1965).

In addition to the loss of this essential freedom and the incumbent damage to their standing as American citizens and their very right to be who they are, Plaintiffs were clearly placed under

7

emotional distress and anguish from the fear of prosecution and the incumbent diminution in status from criminal accusation.

There is no question that the Plaintiff Brown, under the threat of criminal prosecution hired the services of an attorney. There is no question that in the retainer Plaintiff Brown was the client and the person charged with the offense.  The debt incurred was one personal to Plaintiff Brown.  Defendant would make much that someone else actually paid the fees.  This is a loss to a corporation that Defendant Brown owns and thereby a loss to him personally.  Defendants cite no cases that require a monetary loss of some type for a First Amendment claim to be cognizable.  On the contrary, persons other than the person actually injured by a violation of the First Amendment are entitled to bring such claims because loss of freedom of speech is not only the loss of the individual to express himself, it is loss of the public to hear that particular point of view.  Standing in overbreath cases is granted to challenge statutes that chill speech even to Plaintiffs whose conduct could otherwise have been restrained where the rights of others are chilled.  <u>Grayned v. Cityof Rockford</u>, 408 U.S. 104 (1972).

## II.  A Right to Reasonable Notice of Conduct Prohibited.

No one other than the Defendants has been able to understand their interpretation of this ordinance.  The City through the mayor has admitted such.  The mayor has publicly stated that Defendant Hoge has admitted such.  To do anything else is merely to insist that the emperor is wearing clothes with the

8

apparent expectation that the authority of their words have more authority than the sight of every else's eyes. Fair notice was not present in the words of the ordinance. American Communications Ass'n v. Douds, 339 U.S. 382 (1950).

Although Defendants insist that only three flags are allowed the ordinance never uses the word "three." No number of flags is noted at all other than the term "flags" is used. The use of the term "pole" implies plural in that it only prohibits a pole more than 45' in height. The reasonable interpretation of such language is that poles are allowed but not one over 45' in height.

Plaintiffs did more than just rely on their own interpretation. Plaintiff Brown hired an attorney to give him a legal interpretation. The attorney in correspondence to the City was also unable to read the language in the convoluted manner which the Defendants insisted on enforcing it. The Defendants were told before they attempted to enforce the ordinance that they were being arbitrary and were not allowing a reasonable interpretation of the ordinance. Indeed the plain meaning of the ordinance is that flags, including flags of the United States, flags of the State of South Carolina, or any other flag sanctioned might be flown, and whatever other flag the City thought expressed a suitable message would be allowed to be flown as expressed by the first words of the pertinence ordinance section, "flags."

The point is not that the Defendants' interpretation is so strained and awkward and unreasonable, but that the Plaintiffs' interpretation is so reasonable that everyone else but the

9

Defendants agrees with it.  In addition to their common sense and reason, the Plaintiffs have also relied upon the legal opinion of their attorney.  Such reliance is reasonable.  Men of common intelligence could only guess at Defendants' meaning and could differ as to its application.  Connally v. General Construction Co., 269 U.S. 385 (1926).

## IV.  Malicious Prosecution.  An Individual Tort Brought Against Individuals.

Plaintiffs conceded that malicious prosecution is not an action under the Tort Claims Act, South Carolina Code of Laws Section 15-78-10, et seq.  Rather, it is an exception to the Torts Claims Act and the cause lies against the individual committing the offense.  § 15-78-70(b), South Carolina Code of Laws.  The City of Sumter is not being sued under the Tort Claims Act in this court and cannot be sued outside of the Tort Claims Act for a state law tort.

The question as to the individuals Postell and Hoge is whether probable cause existed.  This is ordinarily a jury matter. Mellon v. Williams, 281 S.C. 182, 314 S.E.2d 612 (Ct.App. 1984). Probable cause did not exist because no court or other competent authority would agree with the Defendants' unreasonable interpretation of the ordinance.  Indeed, the Defendant City did not agree with the individual Defendants' interpretation of the City's ordinance.  Postell and Hoge were obligated to interpret the ordinance in accordance with constitutional principles.  They were not entitled to simply substitute their own judgment for what was

10

aesthetic when criminal penalty is attached.  <u>Grayned v. City of</u> <u>Rockford</u>, 408 U.S. 104, 108 (1972).  Malice is inferred from the lack of probable cause.  <u>Brown v. Bailey</u>, 215 S.C. 175, 54 S.E.2d 769 (1949).

## V.  Defamation.

The Plaintiffs do not to attempt to argue on both sides of the First Amendment.  The Plaintiffs' strong conviction is that the First Amendment freedom of speech is essential and fundamental to a free society and a free people.  We will not argue that the Plaintiffs have a right to speak out against the Defendants and that the Defendants have no right to put forward their position on the same subject.  The difference is that Defendants were trying to silence the Plaintiffs from speaking at all and the Plaintiff were merely seeking to punish the Defendants for trying to make them criminals for their speech.  Plaintiffs' remedies under the First Amendment are adequate.

### CONCLUSION

The nation has watched as the Plaintiffs have stood behind their flag and the rights of us all to battle City Hall. The vox public has reaffirmed the Plaintiffs' belief in a system that is not afraid to allow the people to choose from a variety of views, symbols and expression.  In affirmation of these rights the

11

Plaintiffs ask that this court dismiss the Defendants' motion.

Respectfully submitted.

_____
Wm. Gary White, III
Attorney for the Plaintiffs
2009 Lincoln Street
Columbia, SC 29201
(803) 256-2115

Columbia, South Carolina

March _____, 2002.

March 25, 2001

Martha M. Horn, Attorney
Sumter City Police Department
107 East Hampton Avenue
Sumter, SC 29151

RE:    William R. Brown and the City of Sumter
       My File # 00-2566

Dear Martha:

As you know, I represent William R. ("Rusty") Brown. He owns the property at 200 N. Lafayette Street (at the intersection of Lafayette and Calhoun) on which he conducts the Credit Auto Sales operation.

Rusty recently informed codes enforcement personnel of his intention to install flag poles and flags on this property. He was told that he can only install a United States Flag, a South Carolina State Flag, a Sumter County Flag, and a City of Sumter Flag (one of each). He asked to find out whether the existing ordinance prohibits him from flying any others.

I asked Mr. Bill Hoge about this March 16th. I am enclosing a copy of page 192 from the ordinance which I showed Bill during our conversation. I wanted to make sure I was dealing with the right section of the ordinance. He confirmed that this is the section which permits flags.

During my conversation with Mr. Hoge, he told me that the city planning commission is "interpreting" this ordinance to prohibit any property owner from flying more than one of each of the flags which I have identified in the preceding paragraphs. When I asked him about the regulation which sanctioned the state and county flags, he told me that there wasn't one. However, he said that the planning commission has decided that those will be tolerated. Essentially, the way Mr. Hoge is interpreting the ordinance, the note to Exhibit 19 would read, in pertinent part, as follows: "One flag of the United States, one flag of the State of South Carolina, and one of each other flag permitted by the Sumter City Planning Commission will be allowed ...."

The reason we are so concerned about this is because Rusty is already being prosecuted

for one alleged sign violation.  That's the one we need to talk about when you back to work after your surgery.  Now, he is being threatened with prosecution if he does not abide by the terms of the ordinance, *as it is being construed by Mr. Hoge.*  As you can see from the note, the ordinance permits "flags."  If codes enforcement officers are going to prosecute Rusty because Mr.  Hoge interprets "flags" to mean a single flag, we have a problem.

During our conversation, I specifically asked Mr.  Hoge if there were any other sections of the ordinance which deal specifically with flags.  He confirmed that there weren't.  He also told me that was no protocol describing the manner in which a state, city or county flag should be flown but that such protocol would control if there was any.  I can't find any having to do with the manner in which the state flag is flown.  Since Rusty is subject to criminal prosecution for flying the state flag in violation of some protocol, I sure would appreciate you reporting the substance of that to me.

This letter will be going out to you on March 26th, so you wont see it until you return to work after your surgery. In the meantime, though, I am sending a copy to Mr. Hoge with a request that he tell me if I have misrepresented the substance of our conversation.  I am also requesting that he defer issuing any citations to Rusty for "illegal" flags until after he has had a chance to confer with you about this.

I appreciate your help with this.  I look forward to hearing from you shortly.

Sincerely yours,

LINWOOD S. EVANS, JR.

LSE,JR/tai

cc:    William R.  Brown
       % Credit Auto Sales
       200 N.  Lafayette
       Sumter, SC 29150

# LINWOOD S. EVANS, JR.

ATTORNEY AT LAW

7 EAST HAMPTON STREET

P. O. BOX 1273

SUMTER, SOUTH CAROLINA 29151-1273

PHONE: (803) 775-3401

March 27, 2001

Martha M. Horn, Attorney
Sumter City Police Department
107 East Hampton Avenue
Sumter, SC 29151

RE:    William R. Brown and the City of Sumter
       My File # 00-2566

Dear Martha:

As you know, I represent William R. ("Rusty") Brown. He owns the property at 200 N. Lafayette Street (at the intersection of Lafayette and Calhoun) on which he conducts the Credit Auto Sales operation.

Rusty recently informed codes enforcement personnel of his intention to install flag poles and flags on this property. He was told that he can only install a United States Flag, a South Carolina State Flag, a Sumter County Flag, and a City of Sumter Flag (one of each). He asked to find out whether the existing ordinance prohibits him from flying any others.

I asked Mr. Bill Hoge about this March 16th. I am enclosing a copy of page 192 from the ordinance which I showed Bill during our conversation. I wanted to make sure I was dealing with the right section of the ordinance. He confirmed that this is the section which permits flags.

During my conversation with Mr. Hoge, he told me that the city planning commission is "interpreting" this ordinance to prohibit any property owner from flying more than one of each of the flags which I have identified in the preceding paragraphs. When I asked him about the regulation which sanctioned the state and county flags, he told me that there wasn't one. However, he said that the planning commission has decided that those will be tolerated. Essentially, the way Mr. Hoge is interpreting the ordinance, the note to Exhibit 19 would read, in pertinent part, as follows: "One flag of the United States, one flag of the State of South Carolina, and one of each other flag permitted by the Sumter City Planning Commission will be allowed ...."

The reason we are so concerned about this is because Rusty is already being prosecuted for one alleged sign violation. That's the one we need to talk about when you back to work after your surgery. Now, he is being threatened with prosecution if he does not abide by the terms of the ordinance, *as it is being construed by Mr. Hoge.* As you can see from the note, the ordinance permits "flags." If codes enforcement officers are going to prosecute Rusty because Mr. Hoge interprets "flags" to mean a single flag, we have a problem.

During our conversation, I specifically asked Mr. Hoge if there were any other sections of the ordinance which deal specifically with flags. He confirmed that there weren't. He also told me that was no protocol describing the manner in which a state, city or county flag should be flown but that such protocol would control if there was any. I can't find any having to do with the manner in which the state flag is flown. Since Rusty is subject to criminal prosecution for flying the state flag in violation of some protocol, I sure would appreciate you reporting the substance of that to me.

This letter will be going out to you on March 26th, so you wont see it until you return to work after your surgery. In the meantime, though, I am sending a copy to Mr. Hoge with a request that he tell me if I have misrepresented the substance of our conversation. I am also requesting that he defer issuing any citations to Rusty for "illegal" flags until after he has had a chance to confer with you about this.

I appreciate your help with this. I look forward to hearing from you shortly.

Sincerely yours,

LINWOOD S. EVANS, JR.

LSE,JR/tai

cc:    William R. Brown
       % Credit Auto Sales
       200 N. Lafayette
       Sumter, SC 29150

D:\myfiles\DOCS\EVANS\LETTERS\HORNE, MARTHA RE FLAGS-2566.wpd



# SUMTER CITY-COUNTY
# PLANNING COMMISSION

POST OFFICE BOX 1449
SUMTER, SOUTH CAROLINA 29151
(803) 436 2516



Credit Auto Sales
Attn: Mr. W. R. Brown
200 North Lafayette Drive
Sumter, SC 29150

<u>Certified</u>
P 034 763 437

April 9, 2001

**RE: Flags**

Dear Mr. Brown,

A recent site visit at your business found you flying multiply United States Flags for advertising purposes.

Section 8.i.7 of the Sumter Zoning and Development Standards Ordinance lists pennants, flags, and fluttering devices as prohibited signs. Exhibit 19. Note does allow an American Flag to be flown in a patriotic manner. Therefore, I have determined you are in violation of our ordinance and must remove all but one of the United States of America Flags being flown at your business. Request you do this by April 16, 2001.

If there are any questions, please contact me at (803) 436-2516.

Sincerely,

William H. Hoge
Planning Director

ATCHS:    Section 8.i.7 and Exhibit 19, Sumter Zoning and Development Standards
Ordinance.

PC:        Jack Erter, City Attorney
Donna McCullum, Zoning Administrator
Joseph Postell, Codes Director

WHH/glc

---

PLANNING • ZONING • BUILDING INSPECTIONS • CODES ENFORCEMENT

b. Contractor's signs and signs for subdivisions under construction are allowed as a temporary sign, provided such signs are removed within one week of projected completion.

c. Banners are allowed for grand openings in all districts for thirty (30) days, and allowed year-round in the Central Business District (CBD) upon obtaining an annual sign permit. Maximum size allowed is 50 sq. ft.

d. Political Signs: Signs in this category are specifically designed to allow non-commercial speech supporting candidates in upcoming elections for office on the local state or federal levels of government, ballot initiatives or referenda appearing on the ballot in an upcoming election, and/or voter registration. The following subsections are designed to implement the stated purpose herein while protecting the community against inordinate sign clutter which detracts from the appearance of the community:

   1. Political signs shall not be allowed on the public-right-of-way, parks or other public properties;
   2. Political signs placed on a lot zoned commercial, agricultural or industrial may not exceed 32 square feet. Beginning January 1, 2001, such signs may not exceed 16 square feet on a lot zoned commercial;
   3. Political signs placed on a lot zoned residential or conservation-preservation may not exceed 6 square feet;
   4. Political signs may not be placed on any lot prior to 60 days before the election date or voting date and must be removed no later than 15 days following the election date or voting date.

**8.i.7. Prohibited Signs:**

a. Any sign displaying intermittent or flashing illumination or lights of changing degrees of intensity. However, reader boards may communicate an electronic message provided that the message not change more than every two (2) seconds.

b. Any sign or advertising device painted on a fence, power or telephone pole, tree, stone or any natural object;

c. Signs placed or painted on a motor vehicle, trailer, or other object and parked with the primary purpose of providing a sign not otherwise allowed by this Ordinance;

d. Inflatable signs and tethered balloons;

e. Pennants, flags, and fluttering devices;

f. Portable signs other than the sandwich board signs which are permitted as a temporary sign in 8.i.6.a. of this Ordinance.

## EXHIBIT 19 (Continued)
## MAXIMUM TOTAL SIGN AREA BY USE, NUMBER, DIMENSIONS, AND LOCATION OF INDIVIDUAL SIGNS

| | Maximum Square Foot | Percent Ground Floor Area | Square Foot per Linear Foot of Street Frontage | Maximum Area of Free-Standing Sign (sq. ft.) 1, 2, 3 | Height (feet) | Front/Side Setbacks (feet) | Percentage of Wall Area Maximum |
|---|---|---|---|---|---|---|---|
| General Commercial | 750 | 10% | 6 ft ft | (1 sq ft per linear front foot Maximum of 200 sq ft) 200 | 30 | 40/10 | 10% |
| CBD | 250 | 20% | 10 ft ft | (1 sq ft per linear front foot Maximum of 50 sq ft) 150 | 15 | 40/10 | 15% |
| Light Industrial | 800 | 2% | N/A | (1 sq ft per linear front foot Maximum of 50 sq ft) 150 | 15 | 40/10 | 5% |
| Heavy Industrial | 800 | 2% | N/A | (1 sq ft per linear front foot Maximum of 150 sq ft) 150 | 15 | 40/10 | 5% |
| Agricultural Conservation | 100 | N/A | N/A | (1 sq ft per linear front foot Maximum of 150 sq ft) 100 | 15 | 40/10 | N/A |
| Conservation/Preservation | 90 | N/A | N/A | (1 sq ft per linear front foot Maximum of 100 sq ft) 30 | 10 | 40/10 | N/A |

Note: Flags, including flags of the United States, the State of South Carolina, or any other flag sanctioned by these regulations are allowed provided that such flags not exceed 24 square feet in area and shall not be flown from a pole no more than 45 feet in height. American flags must be flown in accordance with the protocol established by the Congress of the United States for the Stars and Stripes. Any flag not meeting these conditions shall be considered a banner sign and shall be subject to regulations as such.

04/17/01  14:45  FAX 7734927          CREDIT AUTO SALE +++ WOODY EVANS          ☒01

## UNIFORM ORDINANCE SUMMONS

### City of Sumter                    NO. 0156

#### VERSUS

| LAST NAME | FIRST NAME | MIDDLE NAME |
|---|---|---|
| Brun | William | R. |

ADDRESS
200 North Lafayette Drive Sumter

SOCIAL SECURITY NUMBER
S.C. 29150

YOU ARE SUMMONED TO APPEAR BEFORE THE MUNICIPAL
JUDGE AT _115 South Harvin Street_

[address] Sumter, SC 29150

| DATE OF TRIAL | TIME OF TRIAL | AM |
|---|---|---|
| ON 4-23-01 | AT 9:00 | (PM) |

#### FOR TRIAL FOR VIOLATION OF CITY ORDINANCE:

| Ordinance Section No. | Date Issued | Bond Amount |
|---|---|---|
| 8.7.7 | 4-17-01 | $ 300.00 |

Description of Ordinance
Pennants Flags –

| Date of Violation | Time of Violation AM (PM) | Place of Violation |
|---|---|---|
| 4-18-01 | 2:00 | 200 North Lafayette |

| Name of Issuing Officer | Title |
|---|---|
| Jose R. Postell | Credit Auto Sales |

Failure to appear in court without first posting bond or obtaining a
continuance is a misdemeanor punishable by fine up to $200 or impris-
onment for up to 30 days.

#### Post Bond Prior To Trial Date

The issuing officer cannot accept the bond. Bond must be posted by cash
or money order [not personal check] delivered or mailed [do not mail
cash] to the above address of the court, or to:

_____

**Requested Disposition.** Indicate the disposition you desire and return
this summons or a copy with the bond payment:

[  ]  Forfeit Bond - No Court Appearance.
[✓]  Bond Posted - Trial by the Municipal Judge.
[  ]  Bond Posted - Trial by Jury.

| _____ | 4-17-01 |
|---|---|
| Signature of Defendant | Date |

Maximum penalty which may be imposed by court for this offense is $200
and/or imprisonment for 30 days.

#### DEFFNDANT COPY

# LINWOOD S. EVANS, JR., ATTORNEY AT LAW

**7 EAST HAMPTON AVENUE/POST OFFICE BOX 1273**
**PHONE: (803) 775-3401/FAX: (803) 773-4055**
**<loophole@cpis.net>**
**SUMTER, SOUTH CAROLINA  29151**

## MEMO/COVER SHEET

**DATE:** APRIL 16, 2001

**TO:**   JACK W. ERTER, CITY ATTORNEY
     FAX NUMBER: 778-1643

**RE:**   CITY OF SUMTER VS. WILLIAM R. ("RUSTY") BROWN
     MY FILE: (00)2566

JACK, here is a copy of a letter I sent Martha Hone on March 27th.  I intended to send one to Mr. Hoge (it even says that!); but I have a new secretary, and, apparently, he didn't get one.  I haven't heard back from Martha either.

Late last week Rusty sent me a copy of Mr. Hoge's letter of April 9th.  Since he copied you, I assume that I shouldn't discuss this with him further or even send him a copy of this memo.  However, I am sending a copy of this to Martha.  I want both of you to know that I am still willing to talk about this if you think a conversation will be of any benefit.

In addition to the differences of opinion I have with Mr. Hoge (as I reported them in my letter to Martha), I also take issue with his declaration that Rusty is flying the flags "for advertising purposes."   If the flags are legal, it doesn't make any difference why they are being flown.  If, however, the city decides to prosecute Rusty for flying them, it may well be violating his freedom of speech.  Hopefully, we won't have to make that argument, but I do want you know that we are prepared to do so if Mr. Hoge is determined to press his point.

In the meantime, if Mr. Hoge really wants to enforce his flag ordinance, he can cite the flag at the USA station on Broad Street in front of WalMart.  I have no idea how big it is, but it is certainly larger that 4' by 6'.  After he gets that one down, we have some more for him to go after.

I look forward to hearing from you on this shortly.

Woody

CC:   WILLIAM R. BROWN
     FAX NUMBER: 773-4927

     MARTHA M. HORNE, ATTORNEY
     FAX NUMBER: 436-2084

# LINWOOD S. EVANS, JR., ATTORNEY AT LAW
**7 EAST HAMPTON AVENUE/POST OFFICE BOX 1273**
**PHONE: (803) 775-3401/FAX: (803) 773-4055**
**<loophole@cpis.net>**
**SUMTER, SOUTH CAROLINA  29151**

## MEMO/COVER SHEET

**DATE:** APRIL 18, 2001

**TO:**   SYBIL VcVICKER GIGER
FAX NUMBER: 436-2300

---

**RE:**   CITY VS. WILLIAM R. BROWN
SUMMONS # 0156
MY FILE:(00)2566

---

SYBIL, attached is a copy of the summons I told you about.  This will confirm our conversation during which I requested a jury trial.

I have already corresponded with Martha Horne about this.  Actually I wrote her before the summons was actually issued.  Nevertheless, I am sending her a copy of this to report my participation in this action as Rusty's attorney and to renew my request that we get together when she returns to the office.

As always, I appreciate you working with me on this.

*Woody*

**CC:**   WILLIAM R. BROWN
FAX NUMBER: 773-4917

MARTHA M. HORNE, ATTORNEY
FAX NUMBER: 436-2084

$JF - 776 \ 4508$

For immediate release...
April 25, 2001

Since I learned yesterday of *charges against* two local businessmen for flying numerous American flags at their used car dealerships, I have reviewed the ordinances in question and have consulted with our City Attorney. I have also talked individually with members of the *Sumter City Council.*

When the current zoning and development standards were enacted by the City and County of Sumter in late 1999, many citizens were concerned about the flying of banners by local businesses. In some instances, these banners blocked the view of motorists. *I know that the only motivation of the Councils which enacted these ordinances was* improvement of the appearance of our community. Sumter is a business - friendly community, and the ordinance attempted to balance appearance with the need of businesses to get their message out. For the most part, I believe the zoning and development ordinances have accomplished this purpose. There was certainly no intention to chill patriotism.

In fact, I know that there is *no more patriotic community* in our country than Sumter, *South Carolina.* We show our patriotism not only by our support of *Shaw Air Force* Base and by flying the flag in a respectful *manner,* but also by sending many of our sons and daughters to serve in the armed forces of our country. Thousands of Sumterites have honorably served their country. Two of our City Councilmen served in the United

ates Marine Corps, and two others served in the United States Air Force.
do not believe that anyone truly believes that the citizens of Sumter and
eir elected leaders do not love this country, or the flag that represents it.
ur local ordinance, which is probably similar to many other local
dinances, is not intended to prevent a citizen from displaying his love of
untry; rather, its intention was to protect our American flag from
ploitation.

The intention of the present ordinance is commendable -- to protect
e American flag from being exploited for commercial gain. However, I do
ot believe that our ordinance is clear enough that any citizen should be
ummoned to court for its violation. For instance, the ordinance states at
e point that all "pennants, flags, and fluttering devices" are prohibited
ec. 8.i.7). In another section it says that a "flag" is allowed without a sign
rmit. (Exhibit 20: Permitted Sign by Type and Zoning Classification". In
note to a third section (Exhibit 19), the ordinance says that a flag not
eeting the protocol established by federal law will be considered a
anner, and thus prohibited. I believe that even the Planning Director has
ferred to the flag provisions of the zoning ordinance as being
mbiguous".

For all of these reasons, I am recommending that our Planning
rector withdraw the citations his office has issued for violation of the sign
dinance, to the extent that these citations are based upon flying of the
merican flag. I also call upon the Planning Commission to revisit our

zoning and development ordinance as it relates to flying of any official flag including the American and South Carolina flags. I suggest that the amendment should in no way prevent anyone from flying an official flag on his property. Any restrictions by way of size or number, in my opinion, should be based upon sound principles of zoning and development, including appearance standards. However, I further suggest that actions to enforce flag protocol should not be handled in a zoning ordinance. We have State and Federal laws to protect the dignity of official flags. Those general laws should be used to prosecute those who desecrate, mutilate, or otherwise violate laws designed to protect the flag. Our City Manager, J. Tobias, concurs with these suggestions.

The City of Sumter does not want anyone prosecuted for flying an American flag. But it is clear from our existing ordinance that the City Council here in Sumter does not want the American flag exploited for commercial gain. I believe that our ordinance is probably confusing to a businessperson who wants to comply with the law. This confusion is obvious because some businesses which were displaying multiple flags removed them when the ordinance became effective. Therefore, we need to revisit this ordinance and make its requirements clear to all before anyone is prosecuted for not complying with it.

Thank you.

Page 3 of 3

# LINWOOD S. EVANS, JR.

**ATTORNEY AT LAW**

7 EAST HAMPTON STREET

P. O. BOX 1273

SUMTER, SOUTH CAROLINA 29151-1273

PHONE: (803) 775-3401

May 24, 2001

Ms. Martha M. Horne, Attorney
Sumter City Police Department
107 E. Hampton Avenue
Sumter, SC 29150

Mr. Jack Erter, City Attorney
Post Office Box 580
Sumter, SC 29151

RE:    William R. Brown and the City of Sumter
       My File # 2566

Dear Martha and Jack:

I am enclosing for each of you a copy of my April 26th letter to Martha, requesting a report regarding the status of the referenced charge which, so far as I know, is still pending for jury trial disposition in City Recorder's Court. I really would appreciate one of you extending me the courtesy of a response to my inquiry. Thank you for your cooperation and prompt attention.

Sincerely yours,

LINWOOD S. EVANS, JR.

LSE,JR/tai

cc:    Mr. William R. Brown
       200 N. Lafayette Drive
       Sumter, SC 29150

# LINWOOD S. EVANS, JR.

**ATTORNEY AT LAW**
7 EAST HAMPTON STREET
P.O. BOX 1273
SUMTER, SOUTH CAROLINA 29151-1273

PHONE: (803) 775-3401
April 26, 2001

Ms. Martha M. Horne, Attorney
Sumter City Police Department
107 E. Hampton Avenue
Sumter, SC 29150

RE:     William R. Brown and the City of Sumter
        My File # 2566

Dear Martha:

I hope this letter finds you back in the office and doing well. If not, I hate to worry you, but I don't know where else to turn.

Rusty Brown just called to report that charges against him had been dropped. According to the information he was given, this happened either during or after some kind of a press conference in which Joe was participating as Mayor.

I guess I could call the Magistrates office to see what the folks there know about it. However, Sybil is out of town, and I don't know who else to talk to. Since, technically, you represent the City, I wouldn't feel right talking to Joe either. However, in the event that you are still out, I am sending a copy of this to Jack Erter with a request that he provide me with a status report. I have no idea that the case is up for trial any time soon, but I would like to know what is going on.

There is one other thing that I need to emphasize. I didn't have anything to do with either Rusty or Danny Barwick calling in the news media. The first I knew about any such contact was when I saw Danny on a WIS news program early one morning this week. In the mean time I have declined several requests for an interview. Although I think he wound up on television any way, I asked Rusty to stay away from the media as well. I think you know me well enough to realize that I don't try my cases on television!

I look forward to hearing from either you or Jack on this shortly.

Sincerely yours,

LINWOOD S. EVANS, JR.

LSE,JR/tai

cc:     Jack Erter, City Attorney
        Post Office Box 580.
        Sumter, SC 29151

        William R. Brown
        200 N. Lafayette Drive
        Sumter, SC 29150

# LINWOOD S. EVANS, JR.

ATTORNEY AT LAW

7 EAST HAMPTON STREET

P.O. BOX 1273

SUMTER, SOUTH CAROLINA 29151-1273

PHONE: (803) 775-3401

June 1, 2001

The Honorable Sybil McVicker Giger
Clerk, Sumter Municipal Court
115 S. Harvin Street
Sumter, SC 29150

RE:   William R. Brown [Summons 0156]
Danny Barwick [Summons 0157]
My File # 2566

Dear Sybil:

Here are copies of Summons 0156 and 0157 which were issued to Rusty Brown and Danny Barwick on April 23rd. I previously filed notice that I would be representing Danny and Rusty in connection with these charges. At that time I requested a jury trial on each charge as well.

I have been reading a lot in the newspaper about how these charges have been dismissed. However, I haven't been able to obtain "official" confirmation of that. Martha Horne has suggested that I see what your records reflect.

Please look these cases up on your computer and tell me whether there are still pending. I look forward to hearing from you on this shortly. Thank you for you cooperation and prompt attention.

Sincerely yours,

LINWOOD S. EVANS, JR.

LSE,JR/tai

cc:    Mr. William R. Brown

Mr. Danny Barwick

Ms. Martha Horne, Attorney

# LINWOOD S. EVANS, JR.

### ATTORNEY AT LAW
7 E. HAMPTON -- P.O. BOX 1273
SUMTER, SC  29151
775-3401

MR. WILLIAM R. BROWN
% CREDIT AUTO SALES
200 NORTH LAFAYETTE
SUMTER, SC  29150

RE: CITY OF SUMTER V. BROWN
ORDINANCE VIOLATION CHARGE

**LSE FILE #:**  (00)2566

**DATE:** JUNE 20, 2001                     **FEDERAL ID NUMBER:**  57 0831552

| DATE | SERVICES/COST ADVANCES | FEES* | COSTS | CREDITS |
|---|---|---|---|---|
| 06/12/00 | O/C WITH RUSTY | 60.00 | | |
| 07/25/00 | CLIENT CONFERENCE & LETTER TO JUDGE HERBERT RE AUGUST 21ST TERM CONFLICT | 30.00 | | |
| 09/01/00 | LETTER TO JUDGE HERBERT RE: CITY V. TAMMY DOCKET MEETING; LETTER TO SYBIL RE: RUSTY JURY TRIAL | 30.00 | | |
| 02/01/00 | O/C W/ RUSTY; ATTEND DOCKET MEETING RE: CITY V. RUSTY | 150.00 | | |
| 02/03/00 | LETTER TO RUSTY RE: TRIAL AND JURY SELECT | 30.00 | | |
| 02/15/01 | PAYMENT RECEIVED - THANK YOU | | | 300.00 |
| 03/16/01 | O/C W/ RUSTY TO REVIEW PICTURES; RESEARCH ORDINANCE; INQUIRY FAX TO MARTHA HORNE | 150.00 | | |
| 03/16/01 | MEET W/ HOGE RE: FLAG ORDINANCE; P/C WITH MARTHA HORNE RE: NO MARCH 26TH TERM OF CITY COURT | 60.00 | | |
| 03/27/01 | LETTER TO MARTHA HORNE RE: FLAG ORDINANCE | 30.00 | | |
| 04/16/01 | TRANSMIT/INQUIRY FAX TO JACK ERTER | 30.00 | | |
| 04/26/01 | P/C W/ RUSTY; HORNE INQUIRY LETTER RE: STATUS OF FLAG ORDINANCE CHARGES | 30.00 | | |
| 04/29/01 | P/C W/GARY WHITE AND TRANSMIT LETTER | 30.00 | | |
| 05/14/01 | PAYMENT RECEIVED CK # 7881 - THANK YOU | | | 330.00 |
| 06/01/01 | P/C W/ MARTHA HORNE; SYBIL INQUIRY LETTER | 30.00 | | |
| 06/15/01 | P/C W/ SYBIL; REPORT LETTER TO MARTHA HORN | 30.00 | | |
| 06/20/01 | PAYMENT RECEIVED CK # 7995 | | | 60.00 |
| | | | | |
| | | $690.00 | $0.00 | $690.00 |

| BALANCE DUE | $0.00 |
|---|---|

D:\myfiles\DOCS\EVANS\BROWN, RUSTY\ORDINANCE VIOLATION - 2566\BILL.wpd

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Daniel W. Barwick, William R. )<br>Brown, and others similarly )<br>situated, )<br>    )<br>    Plaintiffs, )<br>    )<br>    vs. )<br>    )<br>The City of Sumter, Bill )<br>Hoge and Joseph Postell, )<br>    )<br>    Defendants. )<br>    ) | C/A No. 3:01-2213-19<br><br><br><br><br>**AFFIDAVIT OF PLAINTIFF**<br>**WILLIAM R. BROWN** |

I, William R. Brown, being first duly sworn, do depose and state:  I heard the press release statement ready by the mayor of Sumter over the television.  The attached is a true transcript of that statement.

William R. Brown

SWORN to before me this

22 day of March, 2002.

Notary Public for South Carolina
My commission expires: 12/11/11

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Daniel W. Barwick, William R. Brown, and others similarly situated, | C/A No. 3:01-2213-19 |
| Plaintiffs, | |
| vs. | CERTIFICATE OF SERVICE |
| The City of Sumter, Bill Hoge and Joseph Postell, | |
| Defendants. | |

I, Carey B. Drafts, employee of the Law Firm of Wm. Gary White, III, hereby certify that on this __25th__ day of March, 2002, I have served Plaintiffs' **Memorandum in Opposition to Defendants' Motion for Summary Judgment** upon the following by depositing same in the United States Mail, postage paid addressed to:

A. Johnston Cox, Esquire
Ellis, Lawhorne & Sims, P.A.
P. O. Box 2285
Columbia, South Carolina 29202

_Carey B. Drafts_
Carey B. Drafts